IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

DELIA RUIZ RIVERA,

    Plaintiff,

    v.                              CIVIL NO. 01-1757 (RLA)

PFIZER PHARMACEUTICAL LLC,

    Defendant.

## ORDER IN THE MATTER OF PLAINTIFF'S DISABILITY CLAIMS

Plaintiff instituted these proceedings alleging discrimination based on her disability as well as her sex. Only the claims asserted under the Americans with Disabilities Act ("ADA")[1] and Law No. 44 of July 2, 1985, as amended, ("Law 44")[2] remain pending[3] which defendant has moved to dismiss by way of summary judgment. The court having reviewed the arguments presented by the parties as well as the documents in the court's record, FINDS as follows:

### I. BACKGROUND

According to plaintiff, defendant refused to provide her with the necessary accommodation at work and subsequently terminated her from employment due to her disability. In the alternative, plaintiff

---

[1]  42 U.S.C. § 12101-12213.

[2]  P.R. Laws Ann. tit. 1, §§ 501-511 (supp. 2006).

[3]  *See*, Partial Judgment Dismissing Sexual Harassment and Pregnancy Discrimination Claims (docket No. 44).

argues that she was terminated "because of her perceived disability."[4]
Defendant, on the other hand, contends that plaintiff is not disabled
within the meaning of ADA nor was she perceived as disabled.

## II. **THE FACTS**

The following uncontested relevant facts appear from the
evidence submitted in this case:

1.  Plaintiff commenced working with the defendant on a
    temporary basis as a packaging operator in defendant's
    Bottling Department at the end of 1997.

2.  In November 1998, plaintiff became a regular employee
    continuing in the same position.  On June 1, 1999,
    plaintiff submitted a medical certificate from her
    gynecologist, Dr. Gonzalez Camacho, indicating that
    plaintiff was 8 weeks pregnant and recommending that she
    avoid walking long distances.

3.  No adjustments to her work demands were provided in
    response thereto.

4.  On August 14, 1999, plaintiff tendered another medical
    certificate from Dr. Gonzalez Camacho informing that
    plaintiff was now 18 weeks pregnant and was suffering from
    edema in her legs and feeling numbness in her extremities.
    He recommended that she should only work day shifts and in
    a seated position. On August 16, 1999, Dr. Gonzalez Camacho

[4]  Amended Complaint (docket No. 13) ¶ 45.

CIVIL NO. 01-1757 (RLA)                                          Page 3

specified that this recommendation should extend until January 3, 2000.

5.   The request for a seated accommodation was prompted by plaintiff's herniated disc.

6.   No accommodation was provided at this time. Rather, Dr. Felix, Pfizer's in-house physician, authorized plaintiff a one-week leave of absence from August 16, 1999, until August 22, 1999.

7.   On August 23, 1999, plaintiff was evaluated by Dr. Felix, who allowed her to return to her regular work without restrictions "pending coordination to work sitting down."

8.   One week later, on August 30, 1999, plaintiff submitted a medical certificate signed by Dr. Oscar Ramos, a physiatrist.  Dr. Ramos indicated that he had evaluated plaintiff on that day due to a left lumbo-sacral radiculopathy probably due to a herniated disc and that she would start medical treatment. The physician advised that plaintiff should be excused from work from August 30, 1999, to November 1, 1999.

9.   Accordingly, plaintiff was authorized medical leave under the temporary non-occupational disability leave (SINOD) for these conditions from September 1, 1999, to November 1, 1999.

**CIVIL NO. 01-1757 (RLA)**                                        **Page 4**

10.   On November 2, 1999, plaintiff was again authorized a SINOD leave through January 1, 2000, for her back condition.

11.   Plaintiff gave birth to her second child on December 31, 1999, and was authorized an eight-week maternity leave through February 24, 2000.

12.   On February 25, 2000, the day plaintiff was due to return to work, she submitted a medical certificate signed by Dr. Ramos indicating that plaintiff was being treated for left Carpal Tunnel Syndrome and Lumbo Sacral Disc Herniation. The physician indicated that although plaintiff was fit to return to work there were some restrictions that should be implemented at her work. These restrictions were:

    −   Avoid repetitive motions of hands.

    −   Avoid hand-over-shoulders position.

    −   Limit lifting-pushing-holding-bending.

    −   Do not lift over 25 lbs.

13.   On February 25, 2000, plaintiff also submitted a certificate from Dr. Norberto Pellot Moran who diagnosed her with a major depression caused by the herniated disc. Accordingly, on that day plaintiff was granted SINOD benefits through March 25, 2000.

14.   Plaintiff returned to work on March 27, 2000, whereupon she was evaluated by Dr. Felix to ensure she was fit to return to work. At that time plaintiff insisted on defendant

implementing the restrictions specified by her physiatrist. However, Dr. Felix indicated that there was no opportunity for her to remain working at the plant with these limitations. Dr. Felix telephoned Dr. Ramos to evaluate plaintiff and subsequently discuss her therapeutic options.

15. Dr. Felix prepared a consultation form for Dr. Ramos for evaluation and recommendations regarding plaintiff's treatment options and rehabilitation to perform her tasks at work.

16. Plaintiff was sent home until further notice and until receiving her physiatrist's opinion.

17. On March 30, 2000, plaintiff reported back to work. She was seen by Dr. Felix for her fit for duty evaluation at which time she provided him the consultation report from Dr. Ramos which, in pertinent part, reads:

> Diagnosis
>
> Left Carpal Tunnel Syndrome
>
> Both Wrists Tendinitis
>
> $L_5S_1$ Discs Herniation
>
> These are progressive diseases and may deteriorate her condition. She uses writs splinters at night and gets anti-inflammatory and muscle relaxants, and needs to protect the affected areas from damage.

Actually she is not a surgical candidate for CTS or HNP.

She should have some restrictions at her work area, so she can do her job with minimal deterioration of her condition. These restrictions should last at least six months, but may be longer.

- Avoid repetitive motions of hands
- Avoid hands-over-the shoulders position
- Do not lift over 25 lbs.
- Limit lifting-carrying-pushing-pulling-holding-bending.

18. Dr. Felix concluded that, "[i]n view of this [sic] recommendations and after conversation with [plaintiff's] work area supervisor where she can not perform the essential tasks of her job and needs her hands I do not recommend a RTW [return to work] to prevent further aggravation or lesion. Case discussed [with] HR [Human Resources] for plan of action."

19. Frances Guzman, Pfizer's Assistant Personnel Manager, advised plaintiff that with the conditions imposed by her physicians she had no chance of working either at Pfizer or at any other pharmaceutical company in the industry.

20. Plaintiff did not return to work.

**CIVIL NO. 01-1757 (RLA)**                                      **Page 7**

---

21. On December 22, 2000 Pfizer sent plaintiff a letter
    requesting her to report to work on December 28, 2000.
    Plaintiff did not appear nor did she excuse her absence.

22. On January 16, 2001 plaintiff was given an ultimatum.
    Either she reported to work by January 22, 2001 or she
    would be terminated.

### III. SUMMARY JUDGMENT STANDARD

Rule 56(c) Fed. R. Civ. P., which sets forth the standard for
ruling on summary judgment motions, in pertinent part provides that
they shall be granted "if the pleadings, depositions, answers to
interrogatories, and admissions on file, together with the
affidavits, if any, show that there is no genuine issue as to any
material fact and that the moving party is entitled to a judgment as
a matter of law." Sands v. Ridefilm Corp., 212 F.3d 657, 660-61 (1st
Cir. 2000); Barreto-Rivera v. Medina-Vargas, 168 F.3d 42, 45 (1st Cir.
1999). The party seeking summary judgment must first demonstrate the
absence of a genuine issue of material fact in the record.
DeNovellis v. Shalala, 124 F.3d 298, 306 (1st Cir. 1997). A genuine
issue exists if there is sufficient evidence supporting the claimed
factual disputes to require a trial. Morris v. Gov't Dev. Bank of
Puerto Rico, 27 F.3d 746, 748 (1st Cir. 1994); LeBlanc v. Great Am.
Ins. Co., 6 F.3d 836, 841 (1st Cir. 1993), *cert. denied*, 511 U.S.
1018, 114 S.Ct. 1398, 128 L.Ed.2d 72 (1994). A fact is material if
it might affect the outcome of a lawsuit under the governing law.

CIVIL NO. 01-1757 (RLA)                                      **Page 8**

Morrissey v. Boston Five Cents Sav. Bank, 54 F. 3d 27, 31 (1st Cir. 1995).

"In ruling on a motion for summary judgment, the court must view 'the facts in the light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor.'" Poulis-Minott v. Smith, 388 F.3d 354, 361 (1st Cir. 2004) (citing Barbour v. Dynamics Research Corp., 63 F.3d 32, 36 (1st Cir.1995)).

Credibility issues fall outside the scope of summary judgment. "'Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.'" Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). See also, Dominguez-Cruz v. Suttle Caribe, Inc., 202 F.3d 424, 432 (1st Cir. 2000) ("court should not engage in credibility assessments."); Simas v. First Citizens' Fed. Credit Union, 170 F.3d 37, 49 (1st Cir. 1999) ("credibility determinations are for the factfinder at trial, not for the court at summary judgment."); Perez-Trujillo v. Volvo Car Corp., 137 F.3d 50, 54 (1st Cir. 1998) (credibility issues not proper on summary judgment); Molina Quintero v. Caribe G.E. Power Breakers, Inc., 234 F.Supp.2d 108, 113 (D.P.R. 2002). "There is no room for credibility determinations, no room for the measured weighing of conflicting evidence such as the trial process entails, and no room for the judge

CIVIL NO. 01-1757 (RLA)                                           **Page 9**

---

to superimpose his own ideas of probability and likelihood. In fact, only if the record, viewed in this manner and without regard to credibility determinations, reveals no genuine issue as to any material fact may the court enter summary judgment.". Cruz-Baez v. Negron-Irizarry, 360 F.Supp.2d 326, 332 (D.P.R. 2005) (internal citations, brackets and quotation marks omitted).

In cases where the non-movant party bears the ultimate burden of proof, he must present definite and competent evidence to rebut a motion for summary judgment, Anderson v. Liberty Lobby, Inc., 477 U.S. at 256-257, 106 S.Ct. 2505, 91 L.Ed.2d 202; Navarro v. Pfizer Corp., 261 F.3d 90, 94 (1st Cir. 2000); Grant's Dairy v. Comm'r of Maine Dep't of Agric., 232 F.3d 8, 14 (1st Cir. 2000), and cannot rely upon "conclusory allegations, improbable inferences, and unsupported speculation". Lopez-Carrasquillo v. Rubianes, 230 F.3d 409, 412 (1st Cir. 2000); Maldonado-Denis v. Castillo-Rodríguez, 23 F.3d 576, 581 (1st Cir. 1994); Medina-Muñoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990).

### IV. ADA

The ADA prescribes that no employer "shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to... discharge of employees... and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). The term "discriminate" includes the employer's failure to make "reasonable accommodations to the known physical or mental

CIVIL NO. 01-1757 (RLA)                                        Page 10

limitations of an otherwise qualified individual with a disability".
42 U.S.C. § 12112(b)(5)(A).

   Although the evidentiary paradigm for establishing a prima facie
discrimination claim in termination actions is different from that
applicable to a failure to accommodate claim, both causes of action
require that the plaintiff be disabled within the meaning of the ADA.

   In cases where a plaintiff alleges that an adverse employment
action was taken due to a disability the "burden-shifting framework
outlined by the Supreme Court in Mc-Donnell-Douglas" is used. Tobin
v. Liberty Mut. Ins. Co., 433 F.3d 100, 104 (1st Cir. 2005).

   Accordingly, in order to qualify for the ADA's protection in
this case, plaintiff has the initial burden of establishing that: (1)
she suffers from a "disability" within the meaning of the ADA; (2)
she was able to perform the essential functions of her position with
or without reasonable accommodation; and (3) the employer's adverse
employment actions were based in whole or in part on her disability.
Orta-Castro v. Merck, Sharp & Dohme Quimica P.R., Inc., 447 F.3d 105,
111 (1st Cir. 2006); Tobin, 433 F.3d at 104; Bailey v. Georgia-Pacific
Corp., 306 F.3d 1162, 1166 (1st Cir. 2002); Carroll v. Xerox Corp.,
294 F.3d 231, 238 (1st Cir. 2002); Gillen v. Fallon Ambulance Serv.,
Inc., 283 F.3d 11, 18 (1st Cir. 2002); Quinn v. A.E. Staley Mfg. Co.,
172 F.3d 1, 9 n.3 (1st Cir. 1999); Tardie v. Rehab. Hosp. of Rhode
Island, 168 F.3d 538, 541 (1st Cir. 1999).

CIVIL NO. 01-1757 (RLA)                                      **Page 11**

A failure-to-accommodate claim, on the other hand, has a different set of requirements, all of which must be met if plaintiff is to survive a motion for summary judgment. The First Circuit Court of Appeals has listed these as: (a) plaintiff must furnish sufficient admissible evidence that she is a qualified individual with a disability within the meaning of the ADA; (b) that she worked for an employer covered by the ADA; (c) that the employer, despite its knowledge of the employee's physical limitations, did not accommodate those limitations; (d) that the employer's failure to accommodate the known physical limitations affected the terms, conditions, or privileges of the plaintiff's employment. Orta-Castro, 447 F.3d at 112; Tobin, 433 F.3d at 107; Higgins v. New Balance Athletic Shoe, 194 F.3d 252, 264 (1st Cir. 1999).

The term "disability" as defined in the statute is "a physical or mental impairment that substantially limits one or more of the major life activities of such individual." 42 U.S.C. § 12102(2)(A). Hence, plaintiff's initial step in establishing a disability claim under the ADA is to present evidence of a physical or mental impairment. Toyota Motor Mfg., Kentucky, Inc. v. Williams, 534 U.S. 184, 194, 122 S.Ct. 681, 691, 151 L.Ed.2d 615 (2002).

In making our determination under the ADA, the particular circumstances attendant to plaintiff's condition must be examined. "[T]he existence of a disability [must] be determined in ... a case-by-case manner." Toyota, 534 U.S. at 198. "Whether a person has a

CIVIL NO. 01-1757 (RLA)                                    Page 12

---

disability under the ADA is an 'individualized inquiry.'" Bailey, 306 F.3d at 1167 (citing Sutton v. United Air Lines, Inc., 527 U.S. 471, 483, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999)); Carroll, 294 F.3d at 238.

However, having an impairment in and of itself is not sufficient to be entitled to ADA's protection. It is imperative that the impairment also have a substantial effect on a major life activity. Toyota, 534 U.S. at 195; Sullivan v. Neiman Marcus Gp., Inc., 358 F.3d 110, 115 (1st Cir. 2004); Whitlock v. Mac-Gray, Inc., 345 F.3d 44, 46 (1st Cir. 2003); Bailey, 306 F.3d at 1167; Carroll, 294 F.3d at 238.

Hence, evidence of an impairment supported only by a medical diagnosis is inadequate to prove a disability within the provisions of the ADA. "It is insufficient for individuals attempting to prove disability status under this test to merely submit evidence of a medical diagnosis of an impairment." Toyota, 534 U.S. at 198; Whitlock, 345 F.3d at 46; Calef v. Gillette Co., 322 F.3d 75, 83 (1st Cir. 2003); Bailey, 306 F.3d at 1167.

In this regard, a physician's "conclusory assertion of total disability - an assertion lacking elaboration and support in the record - [is not] sufficient to make the individualized showing of [plaintiff's] particular limitations". Whitlock, 345 F.3d at 46. See also, Gonzalez v. El Dia, Inc., 304 F.3d 63, 74 (1st Cir. 2002)

CIVIL NO. 01-1757 (RLA)                                              Page 13

("testimony presented by the treating physician [was] highly conclusory.")

"Instead, the ADA requires [that claimants submit]... evidence that the extent of the limitation caused by their impairment in terms of their own experience is substantial." Toyota, 534 U.S. at 198 (citation and internal marks omitted.) That is, "[a]n ADA plaintiff must offer evidence demonstrating that the limitation caused by the impairment is substantial in terms of his or her own experience." Bailey, 306 F.3d at 1167.

The ADA does not define the term "substantially limits." The Supreme Court has stated that "'substantially' in the phrase 'substantially limits' suggests 'considerable' or 'to a large degree'." Toyota, 534 U.S. at 196. "A substantial limitation cannot include any impairment which interferes in only a minor way with the performance of manual tasks, and the phrase 'major life activities' refers to only those activities which are of central importance to daily life." Benoit, 331 F.3d at 176 (citations and internal quotation marks omitted).

On the other hand, "'[m]ajor' in the phrase 'major life activities' means important... 'Major life activities' thus refers to those activities that are of central importance to daily life." Toyota, 534 U.S. at 198; Bailey, 306 F.3d at 1167. See also, Benoit, 331 F.3d 176 (if no major life activity is affected the impairment is not considered a "disability" under ADA); Guzman-Rosario v. United

CIVIL NO. 01-1757 (RLA)                                    **Page 14**

Parcel Service, Inc., 397 F.3d 6, 10 (1st Cir. 2005) (whether plaintiff's "condition impinged sufficiently on a 'major life activity' to be treated as disabling."

Temporary conditions are not covered by ADA. "The impairment's impact must also be permanent or long term." Toyota, 534 U.S. at 198; Guzman-Rosario, 397 F.3d at 10; Sullivan, 358 F.3d at 116; Benoit v. Technical Mfg. Corp., 331 F.3d 166, 176 (1st Cir. 2003); Carroll, 294 F.3d at 238.

### A. DISABLED

We find no evidence in the record showing that plaintiff specifically identified the major life activities that were being purportedly limited by her conditions, either at the time she requested accommodation or when she was allegedly terminated from employment. Faced with this scenario, defendant's arguments address alternate theories of liability under the ADA, premised on either plaintiff's disability based on substantial limitations in performing manual tasks, or substantial limitation in the major life activity of working. The motion is centered on the evidence available to the employer at the relevant period of time which, as previously noted, only made reference to plaintiff's carpal tunnel syndrome, tendinitis, lumbo sacral disc herniation and restrictions regarding:

repetitive hand motions; hand-over-shoulders position; lifting-pushing-holding-bending, and lifting over 25 pounds.[5]

### (1) Manual Tasks

We agree with the defendant that the record does not support a finding of a substantial impairment to plaintiff's ability to carry out manual tasks. *See, i.e.*, Toyota, 534 U.S. at 196 (plaintiff must "establish a substantial limitation in the specific major life activity of performing manual tasks.") "In order for performing manual tasks to fit into this category - a category that includes such basic abilities as walking, seeing, and hearing - the manual tasks in question must be central to daily life. If each of the tasks included in the major life activity of performing manual tasks does not independently qualify as major life activity, then together they must do so." *Id*. at 197.

"[T]o be substantially limited in performing manual tasks, an individual must have an impairment that prevents or severely restricts the individual from doing activities that are of central importance to most people's daily lives." *Id*. at 198.

In making its analysis, the court must consider claimant's ability to tend to his own personal hygiene and to carry out personal and household chores. *See*, *Id*. at 201-202 ("household chores, bathing, and brushing one's teeth are among the types of manual tasks

_____

     [5]  There is no evidence as to how a weight-lifting restriction of 25 pounds constitutes a significant impairment in plaintiff's particular case.

of central importance to people's daily lives, and should have been part of the assessment of whether [claimant] was substantially limited in performing manual tasks.")

The limitations imposed must be substantial. For instance, the Supreme Court has ruled that "changes in [claimant's] life [i.e., avoid sweeping, quit dancing, occasionally seek help dressing and reducing how often played with children, tended her garden and drove long distances] did not amount to such severe restrictions in the activities that are of central importance to most people's daily lives that they establish a manual task disability as a matter of law." Toyota, 534 U.S. at 202.

Further, the inquiry must focus on the daily restrictions actually being imposed by the impairment, not the possible interference with work-related duties. "When addressing the major life activity of performing manual tasks, the central inquiry must be whether the claimant is unable to perform the variety of tasks central to most people's daily lives, not whether the claimant is unable to perform the tasks associated with her specific job." *Id*. at 200. Thus, it is inappropriate for the court to "consider[] [claimant's] inability to do such manual work in her specialized assembly line job as sufficient proof that she was substantially limited in performing manual tasks." *Id*. In other words, there is "no support ... for... idea that the question of whether an impairment

CIVIL NO. 01-1757 (RLA)                                          Page 17

---

constitutes a disability is to be answered only by analyzing the effect of the impairment in the work-place." *Id*. at 201.

In her deposition, plaintiff indicated that she was able to spend time and take care of her children; attend church services; read; prepare food at home; change her baby's diapers; drive; sweep and clean her house; wash dishes; move merchandise in her current job; make and receive phone calls, and type.

As defendant points out, plaintiff did have physical limitations which were documented by her physicians, i.e., carpal tunnel syndrome, herniated disc and tendinitis. She failed, however, in demonstrating how these particular conditions substantially limited a major life activity, specifically, her ability to perform manual tasks. The limitations imposed by her condition are circumscribed to a confined type of activities which by no means prevent her from carrying out substantial life activities as mandated by the statute.

### (2) Working

As we continue our analysis, we must note the Supreme Court's skepticism to rule that "working" is a major life activity. Sutton, 527 U.S. at 492. *See*, Guzman-Rosario, 397 F.3d at 11. ("Awaiting a definite ruling from the Supreme Court otherwise, we have assumed that 'working' is a major life activity and applied the EEOC's framework in [disposing] plaintiffs' ADA claims." Sullivan, 358 F.3d at 115 ("We will, as we have done in the past, assume without deciding that work may constitute a major life activity."); Whitlock,

345 F.3d at 46 n.1 ("We assume, without deciding, that working may constitute a major life activity for purposes of the ADA.") Bailey, 306 F.3d at 1168 n.5 ("We note that there is some doubt a to whether the Supreme Court will ultimately accept 'working' as a major life activity under the ADA.") *See also*, Carroll, 294 F.3d at 239 n.7 (although Supreme Court not yet addressed the issue court has assumed so).

The EEOC regulations,[6] however, define the major life activity of "working" and provide that the term "'substantially limits' means significantly restricted in the ability to perform **either a class of jobs or a broad range of jobs in various classes** as compared to the average person having comparable training, skills and abilities." 29 C.F.R. § 1630.2(j)(3)(I) (emphasis ours).

The EEOC Interpretative Guidance to the regulations provide how an individual's substantial limitation for work under the ADA should be construed:

> An individual is substantially limited in working if the
> individual is significantly restricted in the ability to
> perform a class or jobs or a broad range of jobs in various
> classes, when compared with the ability of the average

---

[6] Although the EEOC regulations are commonly consulted by the courts in ADA cases, "no agency has been granted authority to issue binding regulations interpreting the term 'disability.'" Guzman-Rosario, 397 F.3d at 9 (*citing* Toyota, 534 U.S. at 194). *See also*, Calef, 322 F.3d at 85 ("Like the Supreme Court in *Toyota*, we do not pass on the validity of these regulations.")

CIVIL NO. 01-1757 (RLA)                                    **Page 19**

person with comparable qualifications to perform those same jobs. For example, an individual who has a back condition that prevents the individual from performing any heavy labor job would be substantially limited in the major life activity of working because the individual's impairment eliminates his or her ability to perform a class of jobs. This would be even so if the individual were able to perform jobs in any other class, e.g., the class of semi-skilled jobs. Similarly, suppose an individual has an allergy to a substance found in most high rise office buildings, but seldom found elsewhere, that makes breathing extremely difficult. Since this individual would be substantially limited in the ability to perform the broad range of jobs in various classes that are conducted in high rise office buildings within the geographical area to which he or she has reasonable access, he or she would be substantially limited in working.

Hence, being unable to carry out a particular type of job does not qualify as a substantial limitation to the major life activity of working. Sullivan, 358 F.3d at 116. Plaintiffs must "show that they are precluded from more than the performance of a particular job." Guzman-Rosario, 397 F.3d at 11. "[T]he inability to perform a single, particular job does not constitute the required substantial limitation. *See,* Toyota, 534 U.S. at 201 ("claimant... required to

show an inability to work in a broad range of jobs, rather than a specific job.") (citation and internal quotation marks omitted); Whitlock, 345 F.3d at 46. *See also*, Benoit, 331 F.3d at 176 (plaintiff only instructed to avoid "heavy lifting" and failed to show "that this precluded him from working in a substantial class or broad range of jobs.")

Based on the foregoing, even assuming that plaintiff had alleged that she was substantially limited in the major life activity of working, her claim would still not survive. There is no evidence that plaintiff was not able to work in a substantial class of jobs or a broad range of jobs. Subsequent to her tenure at Pfizer, plaintiff was employed as an assistant at a physician's office manning the telephone and doing general secretarial/clerical work. She was also employed at a sandwich shop carrying out various duties such as cooking, cleaning and tending the cash register.

### (3) Sitting and Standing

Rather than addressing defendant's arguments regarding her failure to establish substantial limitations to her major life activities of performing manual tasks and working, in her opposition to the summary judgment petition plaintiff argues instead that she "is substantially limited in her ability to sit and stand, both of which are major life activities."[7] The only evidence submitted by plaintiff in support of this position is a **May 21, 2002** medical

---

[7]  Plaintiff's Opposition (docket No. 38) ¶¶ 10 and 28.

**CIVIL NO. 01-1757 (RLA)**                                    **Page 21**

report prepared by Dr. Oscar Arroyo Nieves, specialized in physical and rehabilitation medicine, who diagnosed plaintiff's condition as:

    1.   Chronic Low Back Pain

    2.   Lumbar Disc Disease L5 S1 (Herniation)

    3.   Lumbar Radiculopathy

    4.   Fibriomiositis

    5.   Left CTS (Carpal Tunnel Syndrome)

In his assessment, Dr. Arroyo Nieves concluded that plaintiff had back pain as a result of a $L_5$-$S_1$ disc lesion. The physician further noted that plaintiff was receiving rehabilitation treatment. Dr. Arroyo Nieves recommended that plaintiff **should not remain seated or standing for long periods of time** and should alternate between these positions. Further, when lifting objects from the floor, plaintiff should bend her knees. Lastly, the physician indicated that plaintiff could continue carrying out her job duties.

As pointed out by defendant, the expert report submitted with plaintiff's opposition to the summary judgment request fails on various grounds.

No mention is made in the report of plaintiff's prior hand conditions specifically, carpal tunnel and tendinitis or her limitations as a result thereof as certified by Dr. Oscar Ramos, her physiatrist, in early 2000.

Further, the physician's recommendations do not meet the definition of substantial limitation set forth in the regulations

CIVIL NO. 01-1757 (RLA)                                          **Page 22**

which require that plaintiff either be "[u]nable to perform a major life activity that the average person in the general population can perform; or ... [s]ignificantly restricted as to the condition, manner or duration under which an individual can perform a major life activity as compared to the condition, manner or duration under which the average person in the general population can perform that same major life activity." 29 C.F.R. § 1630.2(j)(1)(2006).

There is no reference in the report as to how long plaintiff could sit or stand nor how her limitations compare to the sitting and standing tolerance of the average population.

It is also important to note that plaintiff's counsel's argument in support of a disability based on her alleged substantial limitations in her ability to sit and stand are premised on the notion that plaintiff has "little tolerance to remain sitting or standing **even for shorts (sic) periods of time**".[8] However, this is **not** what the report says. Dr. Arroyo Nieves noted that plaintiff "should not remain seated or standing **for long periods of time**" which is a different assessment altogether.

Lastly, even assuming the report's conclusions are adequate, the report is dated **May 21, 2002** and there is no indication that these alleged limitations were present and to the same degree "at the time

---

[8] Plaintiff's Opposition (docket No. 38) ¶ 30. *See also*, Plaintiff's Sur-reply (docket No. 40) ¶ 23 (emphasis ours).

that [plaintiff] sought an accommodation from [defendant]." <u>Toyota</u>, 534 U.S. at 196.

### (4) Conclusion

Based on the foregoing we conclude that plaintiff has failed to adduce sufficient evidence to establish that she had an ADA covered disability which in turn triggered the protection afforded by the statute.

### B. REGARDED AS DISABLED

Plaintiff further contends that defendant violated the ADA in that she was "perceived as" disabled by her employer.

In its definition of the term "disability" the ADA includes not only those individuals with impairments that substantially limit their major life activities, but also those persons who "are regarded as having such an impairment." 42 U.S.C § 12102(2).

According to the Supreme Court "[t]here are two apparent ways in which individuals may fall within this statutory definition: (1) a covered entity mistakenly believes that a person has a physical impairment that substantially limits one or more major life activities, or (2) a covered entity mistakenly believes that an actual, nonlimiting impairment substantially limits one or more major life activities. In both cases, it is necessary that a covered entity entertain misperceptions about the individual - it must believe either that one has a substantially limiting impairment that one does not have or that one has a substantially limiting impairment when in

CIVIL NO. 01-1757 (RLA)                                          Page 24

fact, the impairment is not so limiting." <u>Sutton</u>, 527 U.S. at 489. *See also*, <u>Bailey</u>, 306 F.3d at 1169; <u>Carroll</u>, 294 F.3d at 238 n.4; <u>Rodriguez-Garcia v. Junta de Directores</u>, 415 F.Supp. 42, 45 (D.P.R. 2006). *See also*, <u>Katz v. City Metal Co., Inc.</u>, 87 F.3d 26 (1st Cir. 1996) (accommodation due under perception of disability claim under ADA).

The purpose behind this provision is to avoid situations where an individual is "rejected from a job because of the 'myths, fears and stereotypes' associated with disabilities". 29 C.F.R. § 1630.2(l) EEOC Interpretative Guidance citing <u>Sch. Bd. of Nassau County v. Arline</u>, 480 U.S. 273, 287, 107 S.Ct. 1123, 94 L.Ed.2d 307 (1987)). *See also*, <u>Sutton</u>, 527 U.S. at 489-90; <u>Calef</u>, 322 F.3d at 87 n.9.

"An employer runs afoul of the ADA when it makes an employment decision based on a physical or mental impairment, real or imagined, that is regarded as substantially limiting a major life activity." <u>Sutton</u>, 527 U.S. at 490.

"'A plaintiff claiming that he is 'regarded' as disabled cannot merely show that his employer perceived him as *somehow* disabled; rather, he must prove that the employer regarded him as disabled *within the meaning of the ADA*.'" <u>Benoit</u>, 331 F.3d at 176 (citing <u>Bailey</u>, 306 F.3d at 1169) (emphasis in original); <u>Sullivan</u>, 358 F.3d at 117.

In this particular case, plaintiff contends that her employer mistakenly believed that her physical conditions substantially

limited her ability to work. That is, her employer perceived her as substantially limited in the major life activity of working.[9]

Hence, we must ascertain whether plaintiff's termination was prompted by Pfizer's inaccurate perception that she was disabled within the meaning of the ADA. "Since [claimant] contends that [her employer] perceived [her] to be substantially limited in the major life activity of working, [she] must show that [she] was perceived as being unable to work in either a class of jobs or a broad range of jobs in various classes as compared with the average person having comparable training, skills, and abilities." Bailey, 306 F.3d at 1169-70. Being unable to carry out a particular type of job does not qualify as a substantial limitation to the major life activity of working. See also, Toyota, 534 U.S. at 633; Guzman-Rosario, 397 F.3d at 11. Sullivan, 358 F.3d at 116; Whitlock, 345 F.3d at 46; Benoit, 331 F.3d at 176.

We find that, based on the record, plaintiff has proffered sufficient evidence to establish a prima facie case that Pfizer regarded her as having an ADA-covered impairment which prevented her from going back to work and which led to her eventual termination. According to the evidence presented, Pfizer mistakenly believed that plaintiff's impairment substantially limited her ability to work in the entire pharmaceutical industry. Dr. Felix, the plant's in-house physician, noted that "with these limitations [plaintiff] cannot stay

---

[9]  Plaintiff's Sur-reply (docket No. 40) ¶ 16.

CIVIL NO. 01-1757 (RLA)                                        **Page 26**

in the plant."[10] Both in her deposition[11] as well as in her sworn statement,[12] plaintiff related that Frances Guzman, Pfizer's Assistant Personnel Manager, had informed plaintiff that with the restrictions recommended by her physician plaintiff had no chance of working either at Pfizer or at any other pharmaceutical company.

Because we are at a summary judgment stage we are not permitted to make credibility determinations. Hence, our ruling must be based on the evidence submitted by plaintiff regarding defendant's perception of her condition. Accordingly, we must deny the summary disposition of this particular claim at this time.

### V. <u>LAW 44</u>

In addition, plaintiff seeks relief under Law 44, the local disability provisions. Defendant has sought to dismiss these state-based claims and plaintiff has failed to oppose the request. Inasmuch as Law 44 mirrors the ADA, because we have concluded that plaintiff is not disabled within the meaning of the ADA, except for the "regarded as" cause of action, her other Law 44 disability claims must also fail. <u>Garcia-Diaz v. Darex</u>, 148 D.P.R. 364, 385 (1999); <u>Roman Martinez v. Delta Maintenance Serv. Inc.</u>, 229 F.Supp.2d 79, 86 (D.P.R. 2002).

---

[10]   Plaintiff's Opposition (docket No. 38) Exh. VII.

[11]   Plaintiff's Opposition (docket No. 38) Exh. II Tr. pp. 166-67.

[12]  Plaintiff's Opposition (docket No. 38) Exh. III.

CIVIL NO. 01-1757 (RLA)                                          Page 27

## VI. CONCLUSION

Based on the foregoing, defendant's Motion for Summary Judgment (docket No. **37**)[13] is **GRANTED** in part.

We find that plaintiff was not disabled within the meaning of the ADA. Accordingly, the ADA discrimination claims for failure to accommodate and termination due to her disability are hereby **DISMISSED**.

Accordingly, the Law 44 discrimination claims for failure to accommodate and termination due to her disability are hereby **DISMISSED**.

Judgment shall be entered accordingly.

The request to dismiss the ADA claim and Law 44 claim for termination due to plaintiff's perceived disability is **DENIED**.

Defendant's Motion to Strike (docket No. **41**) is **DENIED**.[14]

IT IS SO ORDERED.

San Juan, Puerto Rico, this 30th day of November, 2006.


S/Raymond L. Acosta
RAYMOND L. ACOSTA
United States District Judge

---

[13] *See,* Plaintiff's Opposition (docket No. **38**); Pfizer's Reply (docket No. **39**) and Plaintiff's Sur-reply (docket No. **40**).

[14] *See*, Motion Objecting the Filing of Motion to Strike (docket No. **42**).